UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARASH ETEGHAEI, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>    Defendants. | Case No. 22-cv-04298-KAW<br><br>**ODER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 61, 62 |

Plaintiffs Arash Eteghaei and Mitra Zade filed the instant action, alleging violations of their civil rights by Defendants County of Alameda, Sheriff Gregory J. Ahern, Lieutenant Farruggia, Officer Scott Brandon, Officer R. Walter, Detective A. Mateen, Officer J. Dormer, Officer M. Mooncada, and Officer Joshua Armillo (collectively, "Alameda Defendants"), as well as the Regents of the University of California ("UC Regents"), Sergeant G. Levette, Officer Samaniego, and Officer Avila (collectively, "University Defendants"). Pending before the Court are: (1) the University Defendants' motion to dismiss, and (2) the Alameda Defendants' motion to dismiss. (University Defs.' Mot. to Dismiss, Dkt. No. 61; Alameda Defs.' Mot. to Dismiss, Dkt. No. 62.)

The Court previously found this matter was suitable for disposition without a hearing. (Dkt. No. 71.) Having considered the parties' filings and the relevant legal authorities, the Court GRANTS IN PART and DENIES IN PART the University Defendants' motion to dismiss and GRANTS the Alameda Defendants' motion to dismiss.

## I.  BACKGROUND

In 2021, Plaintiffs' son, Arian Eteghaei, was accused of crimes while attending the University of California, Santa Barbara. (Third Am. Compl. ("TAC") ¶ 28, Dkt. No. 59.) The

University Defendants obtained a search warrant for Arian's cell phone and an arrest warrant for Arian at Plaintiffs' home. (TAC ¶ 28.) The warrants were executed by the University Defendants, with the assistance of the Alameda Defendants, on November 2, 2021. (TAC ¶ 28.) Prior to the execution of the warrant, the University Defendants had an operational meeting with the Alameda Defendants to discuss and organize the execution and enforcement of the warrant. (TAC ¶ 30.)

Defendants knew that neither Plaintiff had any criminal history, nor were they accused of any crime. (TAC ¶ 31.) Defendants assembled a team of at least ten officers and "came with a full show of force," blaring their sirens, issuing commands over a loudspeaker, and arriving with their guns drawn. (TAC ¶ 33.) When Plaintiff Eteghaei exited his home in compliance with Defendants' commands, an officer pointed an assault rifle at his face from a close distance and other officers handcuffed him. (TAC ¶ 34.) The same was done to Plaintiff Zade when she exited her home, after she attempted to video record the incident and requested that Defendants produce the search warrant. (TAC ¶ 35.) Plaintiffs allege that the Alameda Defendants placed handcuffs on Plaintiff Zade so tightly that she suffered visible injuries to her wrists. (TAC ¶ 36.) During this time, Defendant Samaniego told the other Defendants to keep Plaintiffs handcuffed. (SAC ¶ 37.) Defendant Avila witnessed the handcuffing but did nothing to prevent it. (SAC ¶ 38.)

On June 21, 2022, Plaintiffs filed the instant case. (Dkt. No. 1 at 9.) On November 18, 2022, the University Defendants filed a motion to dismiss the then-operative complaint. (Dkt. No. 44.) On February 17, 2023, the Court denied the motion on the merits as to the 42 U.S.C. § 1983 claim against the individual University Defendants,[1] but granted the motion as to the § 1983 claim against Defendant UC Regents, the § 1983 and § 1985 conspiracy claim, the § 1986 claim, the supervisor liability claim, and the common law tort claims. (Dismissal Order, Dkt. No. 56.)

On March 10, 2023, Plaintiffs filed the operative complaint that added new claims, asserting claims for: (1) § 1983 claim for excessive force in violation of the Fourth Amendment; (2) supervisory liability as to Defendants Ahern, Farruggia, Mateen, Levette, Samaniego, and

---

[1] The Court denied the University Defendants' motion to dismiss Plaintiff's claims under the California Constitution and statutes because the University Defendants failed to provide any specific arguments as to how these claims were deficient. (Dismissal Order at 7.)

2

1    Avila; (3) failure to intervene as to all individual Defendants except Defendant Ahern; (4)
2    deliberate indifference as to Defendants Ahern, Farruggia, Mateen, Levette, Samaniego, and
3    Avila; (5) § 1983 claim for unreasonable seizure in violation of the Fourth Amendment, (6)
4    violation of California Constitution, Art. 1, § 7, subdivision (a); (7) violation of California Civil
5    Code § 52.1; (8) conspiracy to violate California Civil Code § 52.1; (9) negligent hiring, training,
6    and supervision; (10) assault; (11) battery; (12) intentional infliction of emotional distress; (13)
7    negligent infliction of emotional distress; (14) negligence; (15) false imprisonment; (16) false
8    arrest; and (17) violation of California Government Code § 7286(b)(5) as to Defendants County of
9    Alameda and Ahern. On April 7, 2023, the Alameda Defendants moved to dismiss Plaintiffs' first
10   through fifth claims and tenth through sixteenth claims.[2] The University Defendants moved to
11   dismiss Plaintiffs' second through fourth and sixth through sixteenth claims. On April 21, 2023,
12   Plaintiffs filed their oppositions. (Pls.' Opp'n to University Defs.' Mot. to Dismiss, Dkt. No. 67;
13   Pls.' Opp'n to Alameda Defs.' Mot. to Dismiss, Dkt. No. 68). On April 28, 2023, Defendants
14   filed their replies. (Alameda Defs.' Reply, Dkt. No. 69; University Defs.' Reply, Dkt. No. 70.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted) and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

---

[2] To the extent the Alameda Defendants seek dismissal of the entire operative complaint, the Alameda Defendants fail to provide **any** argument for the dismissal of the sixth through ninth claims or the seventeenth claim. As the Court previously noted in its dismissal order, "[i]t is not the Court's responsibility to make arguments for the parties." (Dismissal Order at 7.) Accordingly, the Court will not dismiss the sixth through ninth and seventeenth claims against the Alameda Defendants.

1  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation
2  marks omitted).
3        A claim is plausible on its face when a plaintiff "pleads factual content that allows the
4  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
5  *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate
6  "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action
7  will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
8        "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are
9  inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th
10 Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat
11 a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a
12 probability requirement, but it asks for more than a sheer possibility that a defendant has acted
13 unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's
14 liability, it stops short of the line between possibility and plausibility of entitlement to relief."
15 *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).
16       Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no
17 request to amend is made "unless it determines that the pleading could not possibly be cured by
18 the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations
19 omitted).

### III.  DISCUSSION

#### A.  Evidence Presented by the Alameda Defendants

22       In support of their motion to dismiss, the Alameda Defendants submit numerous
23 declarations and videos regarding the incident at issue, while arguing that the operative complaint
24 violates Rule 11.  (Alameda Defs.' Mot. to Dismiss at 5-8; *see also* Dkt. Nos. 62-1 (Lucha Decl.),
25 62-2 (Hall Decl.), 62-3 (seeking judicial notice of search warrant, arrest warrant, prior complaints,
26 unedited body-worn camera footage, and use of force policies and procedures).)  At the same time,
27 the Alameda Defendants assert that they "are not intending on turning this motion to dismiss into a
28 motion for judgment on the pleadings or a motion for summary judgment."  (Alameda Defs.' Mot.

to Dismiss at 8 n.6.)

The Court **will not** review approximately 19 videos of body-camera footage or declarations purporting to describe what occurs in that footage, particularly on a motion to dismiss. If the Alameda Defendants believe that Plaintiffs' counsel has violated his Rule 11 obligations, the Alameda Defendants should file a file a separate Rule 11 sanctions motion, which must comply with Rule 11's requirements.

As to the remaining requests for judicial notice, the Court will take judicial notice of the announcement that Sheriff Yesenia Sanchez was elected as the new Sheriff of Alameda County, as well as Alameda County's use of force procedures, as this is information publicly available on government websites and is not subject to dispute.

**B.    Claims 1 and 5: 42 U.S.C. § 1983 -- Violation of Fourth Amendment Rights**

The first cause of action asserts excessive force based on Defendants employing multiple vehicles with sirens, using loudspeaker commands, pointing guns in the face of Plaintiffs, and handcuffing them. (TAC ¶ 49.) The fifth cause of action asserts unreasonable seizure based on Defendants pointing guns at Plaintiffs, handcuffing them, and forcing Plaintiff Zade into a law enforcement vehicle. (TAC ¶ 82.) The Alameda Defendants seek dismissal of both claims.

**i.    Individual Alameda Defendants**

The Alameda Defendants argue that the individual Defendants must be dismissed because Plaintiff fails to identify what each individual did. (Alameda Defs.' Mot. to Dismiss at 8-9.) The Court agrees.

"In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Thus, "a plaintiff [can]not hold an officer liable because of his membership in a group without a showing of individual participation in the unlawful conduct." *Id.* Mere presence is insufficient; rather, "either integral participation or personal involvement [i]s required before" an officer can be found liable. *Id.* at 936.

Here, Plaintiffs generally allege that all Alameda Defendants attended the operational meeting to discuss and organize how the warrant would be executed, and that all Alameda

Defendants placed handcuffs on Plaintiff Zade so tightly that she suffered visible injuries. (TAC ¶¶ 30, 36.) There is no allegation as to any action by any specific individual Alameda Defendant, other than: (1) Defendant Mateen allegedly stating to Plaintiff Zade that the University Defendants were legally responsible for the execution of the search warrant in accordance with the law, including its planning and execution, and (2) Defendant Ahern being involved in the development of the Alameda County Sheriff's Department's Use of Force policies. (TAC ¶¶ 29, 41.) In other words, there is no other information as to what any individual Alameda Defendant did, including at the operational meeting or during the arrest itself. This is insufficient, as it essentially "removes individual liability as the issue and allows a [factfinder] to find a defendant liable on the ground that even if the defendant had no role in the unlawful conduct, he would nonetheless be guilty if the conduct was the result of a 'team effort.'" *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996).

In opposition, Plaintiffs contend that this Court previously rejected this argument as to the individual University Defendants, and thus the same conclusion applies here. (Pls.' Opp'n to Alameda Defs.' Mot. to Dismiss at 5-6.) The Court, however, found that Plaintiffs had identified specific actions by each individual University Defendant, such as Defendant Samaniego telling other officers to keep Plaintiffs handcuffed, and Defendant Avila witnessing the illegal handcuffing but failing to intervene. (Dismissal Order at 6.) Thus, rather than rely only on allegations of what individual University Defendants did as a collective group, the Court considered whether there were facts specific to each individual University Defendant that would demonstrate liability or integral participation.

Accordingly, the Court will dismiss the § 1983 claims against the individual Alameda Defendants. The Alameda Defendants urge that the Court dismiss the claims without leave to amend because this is the third amended complaint. (Alameda Defs.' Reply at 6.) This motion, however, is the first motion challenging the sufficiency of the factual allegations as to the Alameda Defendants. Accordingly, the Court will dismiss with leave to amend; in amending, however, Plaintiffs' counsel is reminded of his Rule 11 obligations, particularly as it appears Plaintiffs have been provided with the relevant footage for six months.

### ii. *Monell* Claims

Next, the Alameda Defendants seek dismissal of the *Monell* claims because Plaintiffs fail to explain how the challenged municipal policies resulted in the constitutional violation. (Alameda Defs.' Mot. to Dismiss at 11-12.) Again, the Court agrees.

To establish *Monell* liability, a plaintiff must demonstrate "that the government had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). Here, Plaintiffs point to "the deficiencies in the Alameda County Defendants' Use of Force Policy, which allows for handcuffing without the need for a report," as well as the lack of "a policy regarding the brandishing or display of firearms[.]" (Pls.' Opp'n to Alameda Defs.' Mot. to Dismiss at 7.) Plaintiffs, however, fail to allege any facts demonstrating "a direct causal link between a policy or custom and the alleged constitutional violation." *Garcia v. Cty. of Napa*, No. 21-cv-03519-HSG, 2022 U.S. Dist. LEXIS 6395, at *19-20 (N.D. Cal. Jan. 12, 2022) (dismissing *Monell* claim where there were only conclusory allegations of causation between the policy and violation); *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011) (affirming dismissal of *Monell* claim where the complaint 'lacked any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that this constitutional deprivation was the result of a custom or practice of the City of Covina"); *Adomako v. City of Fremont*, No. 17-cv-06386-DMR, 2018 U.S. Dist. LEXIS 82819, at *11 (N.D. Cal. May 16, 2018) (dismissing *Monell* claim for failure to "plausibly allege any facts to support a causal link between the training program and the Estate's excessive force claim"). In short, it is unclear how either a policy allowing handcuffing without the need to report or the lack of a policy regarding the brandishing of firearms was the "moving force" behind Plaintiffs' constitutional violations. Accordingly, the Court will dismiss the *Monell* claim without prejudice.

### C. Claim 2: Supervisory Liability

Plaintiffs bring a claim for § 1983 "supervisory liability" as to Defendants Ahern, Farruggia, Mateen, Levette, Samaniego, and Avila. Both the Alameda Defendants and University Defendants move for dismissal of this claim.

7

1          First, as to Defendant Ahern, Plaintiffs' only allegation is that Defendant Ahern was directly involved in the development, planning, and implementation of policies that caused the constitutional violations, such as the use of force policies. (TAC ¶ 62.) As discussed with the *Monell* claim, Plaintiffs cite no facts that explain how these policies caused the constitutional violations. Likewise, Plaintiffs make the conclusory allegation that Defendant Ahern "was made aware of the unconstitutional conduct and has acquiesced in and ratified it," but such conclusory statements are insufficient without facts. *Contrast with Starr v. Baca*, 652 F.3d 1202, 1209-1212 (9th Cir. 2011) (alleging facts that demonstrated Baca's knowledge, including: (1) Baca's receipt of a Department of Justice findings letter, weekly reports from his subordinates, and reports from Special Counsel and the Office of Independent Review; (2) Baca's signing of a memorandum of understanding to address constitutional violations in the prison; and (3) Baca being personally advised about the failure to investigate the beatings and killings of specific individuals).

          Second, as to Defendants Farruggia, Mateen, Levette, Samaniego, and Avila, the Court finds that Plaintiffs fail to allege any facts suggesting that these Defendants are supervisors. "[C]ourts have found that a theory of supervisory liability cannot be asserted where a plaintiff fails to allege facts to show that a defendant is a supervisor." *Cesario v. Medina*, No. 2:19-02921 JAK (ADS), 2022 U.S. Dist. LEXIS 152244, at *16 (C.D. Cal. July 29, 2022); *Waters v. Saez*, No. 19-8811 (NLH) (AMD), 2020 U.S. Dist. LEXIS 235214, at *10 (D.N.J. Dec. 15, 2020) ("Of course, in order to be liable under either theory of supervisory liability, one must in fact be the supervisor of the other actors.").

          Here, Plaintiffs cite no facts as to Defendant Farruggia and Mateen that they are supervisors of any other Defendant or involved individual, such as "control or the right to control the officers 'physical conduct in the performance of their jobs." *Waters*, 2022 U.S. Dist. LEXIS 152244, at *11. Plaintiffs' conclusory allegation that Defendants Farruggia and Mateen "supervised the officers who executed the search warrant" is insufficient.

          As to Defendants Levette, Samaniego, and Avila, the Court previously noted: "it is unclear how the Court can conclude that the Alameda Defendants were the subordinates of each of the individual University Defendants, despite them being employed by different entities." (Dismissal

United States District Court
Northern District of California

Order at 7.) In response, Plaintiffs now point to the fact that the individual University Defendants obtained the search warrant and assert that this not only makes them "responsible for its execution," but "vested [them] with supervisory control of the Alameda County Defendants, even though they were members of different collaborating agencies." (TAC ¶ 60.) As support, Plaintiffs point to *Ogborn v. City of Lancaster*, 101 Cal. 4th 448 (2002). (Pls.' Opp'n to University Defs.' Mot. to Dismiss at 4.) *Ogborn*, however, did not speak to supervisory liability. Rather, *Ogborn* held that "officers who lead the team that executes a warrant are responsible for ensuring that they have lawful authority for their actions. A key aspect of this responsibility is making sure that they have a proper warrant that in fact authorizes the search and seizure they are about to conduct." 101 Cal. 4th at 459. The fact that the individual University Defendants were responsible for ensuring an adequate search warrant, however, does not mean that the individual University Defendants automatically became the supervisor of all individuals involved in the execution of the search warrant, regardless of whether they had any control over them.

Thus, the Court will dismiss Plaintiff's supervisory liability claim without prejudice.

### D. Claims 3 and 4: Failure to Intervene and Deliberate Indifference

Plaintiffs bring new claims under § 1983 based on the "failure to intervene" and "deliberate indifference." The Alameda Defendants seek dismissal based on a lack of facts, while the University Defendants seek dismissal because these are not standalone claims, but theories of liability under § 1983. (Alameda Defs.' Mot. to Dismiss at 15; University Defs.' Mot. to Dismiss at 12.)

In opposition to the University Defendants' motion to dismiss, Plaintiffs do not dispute that these are not standalone claims but concedes that "[t]hese claims were inserted to make clear these theories of liability." (Pls.' Opp'n to University Defs.' Mot. to Dismiss at 5.) Given that Plaintiffs have conceded that these are not claims, but merely theories of liability that "clarify" their existing § 1983 claims for unlawful use of force and unreasonable seizure, the Court GRANTS Defendants' motion to dismiss these claims with prejudice.

### E. Claim 6: Violation of California Constitution, Art. I, § 7, Subdivision (a)

The University Defendants move to dismiss Plaintiffs' California Constitution claim

9

1  because Article I, § 7 does not provide for a private right of action for money damages.
2  (University Defs.' Mot. to Dismiss at 12.)  In opposition, Plaintiffs state that they intended to
3  bring a claim under Article, § 13.  (Pls.' Opp'n to University Defs.' Mot. to Dismiss at 5.)

4        Given that Plaintiffs have stated that they did not intend to bring a claim under Article I, §
5  7, the Court will dismiss this claim as to the University Defendants without prejudice.  While the
6  University Defendants argue in their reply that Article I, § 13 does not permit actions for monetary
7  damages, Plaintiffs could conceivably bring such a claim for injunctive and declaratory relief only.
8  (University Defs.' Reply at 11-12; *Roy v. Cty. of L.A.*, 114 F. Supp. 3d 1030, 1041 (C.D. Cal.
9  2015) ("sections 7 and 13 do not confer private rights of action for damages").)  Indeed, courts
10 have allowed such claims to proceed when the plaintiff limited the relief sought to injunctive and
11 declaratory relief with respect to claims brought under the California Constitution.  *See Jones v.*
12 *City of L.A.*, No. 2:20-cv-11147-FWS-SK, 2023 U.S. Dist. LEXIS 46875, at *55 n.7 (C.D. Cal.
13 Jan. 24, 2023); *Reese-Bey v. Ochoa*, No. CV 20-06693-JAK (DFM), 2020 U.S. Dist. LEXIS
14 261934, at *13-14 (C.D. Cal. Dec. 4, 2020) (allowing the plaintiff to amend his California
15 Constitution claims to clarify whether he sought injunctive relief only).  In amending the
16 complaint, Plaintiffs must likewise specify that they seek non-monetary relief unless they can
17 provide legal authority that monetary damages may be obtained under such claims.

18     **F.    Claim 7: Bane Act**
19       The University Defendants move to dismiss the Bane Act claim for failure to allege
20 specific intent by the University Defendants to deprive Plaintiffs of constitutional rights.
21 (University Defs.' Mot. to Dismiss at 13.)[3]

---

[3] In the reply, the University Defendants for the first time argue that Defendant UC Regents cannot be directly liable because it is not a "person."  (University Defs.' Reply at 12-13.)  An argument made for the first time on reply is improper and will not be considered.  *See Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1416 n.12 (9th Cir. 1990) ("issues raised for first time in reply brief will not be addressed").  In any case, the University Defendants' reliance on *K.M. v. Grossmont Union High School District*, a case which did not address the Bane Act but considered different California statutes with specific statutory language defining a "person," is not persuasive. 84 Cal. App. 5th 717, 751-52 (2022).  Further, federal courts have repeatedly found that the Bane Act does apply to municipalities and other public entities.  *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1117 (E.D. Cal. 2012) ("several federal courts interpreting the [Bane Act] have concluded municipalities <u>do</u> fall within its purview.").

10

To establish a Bane Act claim, "[a] plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015). Significantly, "claims under § 1983 and the Bane Act are not coextensive," as "[t]he Bane Act imposes an additional requirement beyond a constitutional violation, namely 'a specific intent'" to violate protected rights. *Est. of Stanley v. City of San Jose*, No. 22-cv-03000-VKD, 2022 U.S. Dist. LEXIS 204268, at *23 (N.D. Cal. Nov. 9, 2022) (quoting *Cornell v. City & Cty. of S.F.*, 17 Cal. App. 5th 766, 800 (2017)). This "specific intent inquiry focuses on two questions: (1) is the right at issue clearly delineated and plainly applicable under the circumstances of the case, and (2) did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?" *Id.* at *23-24 (internal quotation omitted).

Courts have found that the specific intent inquiry is satisfied when there is "reckless disregard for a person's constitutional rights." *Shoar v. Cty. of Santa Clara*, No. C 22-00799 WHA, 2022 U.S. Dist. LEXIS 189548, at *10 (N.D. Cal. Oct. 17, 2022). For example, in *Shoar*, the district court found sufficient allegations of specific intent where the defendants knew about the plaintiff's special medical need but failed to implement the necessary safety precautions despite their knowledge. *Id.* at *11. Likewise, in *Johnson v. City of San Jose*, the district court found specific intent where the defendant fired a foam baton at the plaintiff, even though he was running away from officers and no unlawful assembly had been declared. 591 F. Supp. 3d 649, 669 (N.D. Cal. 2022).

Here, the Court finds that there are adequate allegations of specific intent as to Defendants Samaniego and Avila. Specifically, Plaintiffs allege that Defendant Samaniego told the other Defendants to keep Plaintiffs handcuffed, regardless of its lawfulness. (TAC ¶ 37.) Given Plaintiffs' other allegations that Plaintiffs posed no risk and that Plaintiff Zade had been handcuffed so tightly that she suffered visible injuries, the order to keep Plaintiffs handcuffed could be found to be reckless disregard for Plaintiffs' rights. Likewise, Defendant Avila allegedly witnessed the illegal handcuffing but did nothing. (TAC ¶ 38.)

11

As to Defendant Levette, however, Plaintiffs rely on their allegation that Defendant Levette was a supervising official who was responsible for the execution of the warrant, involved in its planning, and was present at its execution. (Pls.' Opp'n to University Defs.' Mot. to Dismiss at 6 (citing TAC ¶ 39).) These conclusory allegations fail to demonstrate that Defendant Levette was aware of a violation of a constitutional right, or that Levette acted in reckless disregard of those rights or with the particular purpose of depriving Plaintiffs of their constitutional rights.

Finally, as to Defendant UC Regents, Plaintiffs fail to explain why Defendant UC Regents would be liable under the Bane Act. Instead, Plaintiffs' opposition focuses solely on the individual University Defendants.

Accordingly, the Court will dismiss the Bane Act claim against Defendants Levette and UC Regents without prejudice.

### G. Claim 8: Conspiracy to Violate Bane Act

The University Defendants also seek dismissal of Plaintiffs' claim for conspiracy to violate the Bane Act based on Plaintiffs' failure to allege any facts demonstrating a conspiracy. (*See* University Defs.' Reply at 15.)

Plaintiffs argue -- and Defendants do not dispute -- that allegations of a conspiracy to violate § 1983 are sufficient to demonstrate a violation of the Bane Act. (Pls.' Opp'n to University Defs.' Mot. to Dismiss at 7.) Plaintiffs, however, have **not** adequately alleged a conspiracy to violate § 1983. "To allege a § 1983 conspiracy claim, a plaintiff must allege 'which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of the plaintiff's constitutional rights. Merely conclusory allegations of conspiracy are insufficient to state a claim under § 1983." *Allen v. Cty. of Lake*, No. 14-cv-03934-TEH, 2015 U.S. Dist. LEXIS 12091, at *12 (N.D. Cal. Feb. 2, 2015).

Here, Plaintiffs assert that they have adequately alleged a conspiracy based on a single allegation: "The defendants entered into a conspiracy to do this, in violation of plaintiffs' Fourth Amendment rights." (Pls.' Opp'n to University Defs.' Mot. to Dismiss at 7.) This is plainly insufficient, as it includes no facts. To the extent Plaintiffs argue that the Court previously denied the individual University Defendants' motion to dismiss the § 1983 claims, this was based on

12

1  actions taken specifically by each individual University Defendants, not an alleged conspiracy.

2  (*See id.*; Dismissal Order at 5-6.) The Court therefore dismisses this claim against the University

3  Defendants without prejudice.

### H. Claims 10-16: Common Law Claims

Finally, both the Alameda and University Defendants move to dismiss the common law claims.

With respect to the Alameda Defendants, the Court finds that dismissal is warranted because, as with the § 1983 claims, Plaintiffs fail to identify any specific action by the individual Alameda Defendants. Thus, it is unclear, for example, how the individual Alameda Defendants intended to inflict immediate injury on Plaintiffs, which individual Alameda Defendant touched Plaintiffs, or which individual Alameda Defendant confined Plaintiffs.

As to the University Defendants, the Court previously found that "Defendant UC Regents can be held liable for the common law torts to the extent that the individual University Defendants were acting within the scope of their employment when they committed the torts." (Dismissal Order at 8.) Plaintiffs have alleged that Defendants were acting within the course and scope of their employment. (TAC ¶¶ 111, 119, 127, 139, 148, 155, 165.) Thus, at issue is whether Plaintiffs have adequately alleged that each of the individual University Defendants are liable for the tort claims at issue.

For each of the claims, Plaintiffs assert that the individual University Defendants "aided and abetted" in the tort "by assisting in the development of the warrant execution plan, telling the other officers to keep the plaintiffs in handcuffs (Ofr. Samaniego) and witnessing the illegal handcuffing and doing nothing to prevent it." (TAC ¶¶ 113, 121, 129, 136, 147, 154, 164.) "Liability for aiding and abetting a tort applies where a person 'gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'" *Sanchez v. Am. Media*, No. CV 20-2924-DMG (PVCx), 2021 U.S. Dist. LEXIS 198577, at *22-23 (C.D. Cal. July 13, 2021) (quoting *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005)).

Unfortunately, neither party addresses each of the claims separately, instead simply

13

1  discussing all the common law claims as a whole.  This puts the burden on the Court to determine
2  if Plaintiffs have adequately alleged that the individual University Defendants aided and abetted in
3  each claim, whether one can aid and abet in each claim, or if Plaintiffs have alleged facts
4  demonstrating each of the necessary elements of each claim.  This is not the job of the Court; the
5  Court need not determine for Plaintiffs how each claim is adequately pled, and the Court should
6  need not determine for Defendant where each claim is deficient.

To provide the parties guidance, both for Plaintiffs' amendment of the complaint and any future motion to dismiss by Defendants, the Court briefly addresses each of the common law claims.  The Court expects any future briefings on this matter to address the adequacy of each individual claim.

### i. Assault, Battery, False Arrest, and False Imprisonment

It is unclear how the development of the warrant execution plan constitutes substantial assistance in accomplishing a tortious result when there are no specific factual allegations as to what the parties agreed to in developing the plan.  Likewise, it is unclear how the failure to act (in the case of Defendant Avila) constitutes substantial assistance.  Telling the other officers to keep Plaintiffs in handcuffs (in the case of Defendant Samaniego), however, may constitute assistance in the ongoing assault, battery, false arrest, and/or false imprisonment.

### ii. Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct.  *KOVR-TV, Inc. v. Superior Court*, 31 Cal. App. 4th 1023, 1028 (1995).  Plaintiffs provide only conclusory allegations regarding intent or reckless disregard, as well as severe or extreme emotional distress.  *See Rodriguez v. Cty. of San Joaquin by & through the San Joaquin Cty. Human Servs. Agency*, No. 2:16-cv-00770-TLN-JDP, 2022 U.S. Dist. LEXIS 59354, at *44 (E.D. Cal. Mar. 29, 2022) (conclusory allegation that the defendants' conduct was "intended to cause Plaintiff's emotional distress" were insufficient to state a claim);

14

*Launducci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 712 (N.D. Cal. 2014) (finding insufficient facts where the plaintiff "fail[ed] to allege any form of emotional distress beyond the conclusory allegation that Defendants' actions 'cause[d] her mental anguish, anxiety, and distress' and that at some point she 'felt emotionally distressed and pained, fearing for her job and livelihood'").

### iii. Negligent Infliction of Emotional Distress and Negligence

"[N]egligent infliction of emotional distress requires that a plaintiff show (1) serious emotional distress, (2) actually and proximately caused by (3) wrongful conduct (4) by a defendant who should have foreseen that the conduct would cause such distress." *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004). As above, Plaintiffs have failed to plead facts demonstrating severe emotional distress.

Additionally, both negligent infliction of emotional distress and negligence require allegations regarding duty, breach of duty, causation, and damages. *Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (1993). Plaintiffs allege no specific duty, merely asserting that "Defendants owed a duty of care to plaintiffs." (TAC ¶ 145.) Further, to the extent Plaintiffs are alleging that the individual University Defendants "aided and abetted" in the negligent acts, some courts have raised a question of whether a claim of aiding and abetting negligence is cognizable. *See Garber v. United States*, No. 2:15-cv-05867-CAS (JPRx), 2016 U.S. Dist. LEXIS 17179, at *10 n.2 (C.D. Cal. Feb. 9, 2016).

### iv. Conclusion

Based on the above analysis, the Court finds that except for the assault, battery, false imprisonment, and false arrest claims against Defendant Samaniego -- and thus Defendant UC Regents -- the remaining claims do not appear to be adequately pled. The Court will therefore dismiss those claims against the University Defendants.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Alameda Defendants' motion to dismiss, and DISMISSES the first, second, fifth and tenth through sixteenth claims against them without prejudice. The Court DISMISSES the third and fourth claims with prejudice. The Court GRANTS IN PART and DENIES IN PART the University Defendants' motion to dismiss. The

Court DISMISSES the second, sixth, eighth, twelfth, thirteenth, and fourteenth claims as to all the University Defendants without prejudice. The Court DISMISSES the third and fourth claims with prejudice. The Court DISMISSES the seventh claim as to Defendants Levette and UC Regents without prejudice, and DISMISSES the tenth, eleventh, fifteenth, and sixteenth claims as to Defendants Levette and Avila without prejudice.

Plaintiffs may file a fourth amended complaint within **three weeks** of the date of this order. Plaintiffs may **not** add new claims. As this will be the fourth amended complaint and Plaintiffs do not dispute that they have the relevant body camera footage and other initial disclosures, the Court will not permit any further amendments should the claims again be found deficient.

IT IS SO ORDERED.

Dated: June 29, 2023

_____
KANDIS A. WESTMORE
United States Magistrate Judge

16